UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| : | Criminal Case:  1:20-mj-23 (GMH) |
| v.   : | |
| : | |
| : | |
| ROGER CHARLES HEDGPETH II   : | |
| : | |

## UNITED STATES MEMORANDUM AND
## PROFFER IN SUPPORT OF PRETRIAL DETENTION

The United States of America, through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that the defendant be detained pending trial as a serious risk of flight pursuant to 18 U.S.C. § 3142(f)(2)(A).  On February 10, 2020, the defendant was charged via complaint with one count of violating 18 U.S.C. § 871.  At the defendant's initial appearance before this Court, the government requested that the defendant be detained because there is a serious risk that he will flee.  The government also requested that the Court order a competency screen pursuant to 18 U.S.C. § 4241.  The Court set a combined preliminary and detention hearing for February 13, 2020, and it granted the government's request for a competency screen, to be returned on February 14, 2020, subject to the doctor's availability.

As set forth in this Memorandum, the government seeks the defendant's continued pretrial detention because there is a serious risk that he will flee, at least so long as his mental health issues remain unaddressed.

**Principles Governing Requests for Detention**

The Bail Reform Act lists four factors that guide a court's pre-trial detention decision: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. See 18 U.S.C. § 3142(g).  At a detention hearing, the government may present evidence by way of a proffer. *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996). A judicial determination that a defendant should be detained pending trial on the ground of community safety must be supported by clear and convincing evidence. *Smith*, 79 F.3d at 1209.   When the government seeks to detain a defendant on the ground that he is a risk of flight pursuant to 18 U.S.C.§ 3142 (f)(2)(A), the government must demonstrate the defendant's flight risk by a preponderance of the evidence.  *United States v. Xulam,* 84 F.3d 441, 442 (D.C. Cir. 1996).

**Factual Proffer of the Evidence Supporting the Detention**

The government proffers the affidavit in support of a criminal complaint [ECF No. 1], which it incorporates herein.[1]

As noted in the affidavit in support of a criminal complaint, the defendant approached a uniformed Secret Service officer on or about February 8, 2020, and told the officer that he was here to kill the President. He had been reported missing as a critically missing/endangered

---

[1] Undersigned counsel wishes to clarify couple of mistakes and ambiguities in the affidavit for the record.  In the fourth paragraph, the affidavit reads, "Your affiant told agents that he had arrived on the date of the incident . . ." The defendant, not the affiant, made the statements as reported in the affidavit.  Second, in the fifth paragraph, the affidavit reads, "The defendant denied having been diagnosed with mental health issues and that he is only tricked into taking medication."  Counsel would like to clarify that the defendant denied having been diagnosed, and that he *stated* that he is only tricked into taking medication.

person.  The defendant continued to state that a higher power was telling him what to do.  The defendant had on his person a sheathed knife with a three-and-a-half-inch blade and an empty pistol holster.

The defendant told a uniformed officer words to the effect of, "If I can see Donald Trump I will not assassinate him."  He later reiterated to agents that he wanted to kill the President.  The defendant further told agents that he wanted to speak to the President about the treatment and lack of respect he has received as a veteran.  He stated that he wanted to tell the President that his being forced to take medication was a violation of his rights.  When asked about his statement about wanting to kill the President, the defendant stated that he was only trying to get the uniformed officer's attention, but he went on to say that he would try to hurt the President or another Secret Service protectee if the Holy Spirit told him to, and he continued to say that the Holy Spirit only tells him to hurt bad people.

The defendant additionally told Secret Service agents that he was discharged from the U.S. Navy, having separated from service in 2016.  He told agents that he owns a .45 caliber handgun, which was currently located at his uncle's house in Tampa, Florida.[2]  He told agents that he had driven to the District of Columbia from Milwaukee, Wisconsin.[3]  The defendant stated that he had twice been involuntarily committed at Veterans Affairs hospitals, once in Tampa, Florida and once in Milwaukee, Wisconsin.  The latter involuntary commitment, according to the defendant, ended in mid-January 2020.

---

[2]     Undersigned Counsel has received information indicating that the defendant's firearm is located with a different relative in Florida.  The government has not been able to verify precisely where the gun is in fact located, but we are aware of no evidence indicating it is anywhere but Florida.

[3]     During his initial detention, the defendant told a uniformed Secret Service officer that he had driven to the District of Columbia from Florida.

The defendant then denied having been diagnosed with mental health issues and stated that he is only tricked into taking medication.  According to an eCheck report, the defendant does indeed have a mental health diagnosis, and the Government put that reported diagnosis on the record under seal at the initial appearance.  The defendant objected to an initial competency screen.

The defendant has no known ties to the District of Columbia area.  According to the Pretrial Services Agency, there are no conditions or combinations of conditions it can recommend to reasonably ensure the defendant's return to court or the safety of the community.  According to representations made by the Pretrial Services Agency at the defendant's initial appearance, the defendant did not tell PSA where he would live if released.

The government has reached out to defense counsel to note that it would be willing to explore some sort option that involved mental-health treatment in an inpatient or residential facility if that facility could also satisfy the government's concerns about risk of flight and community safety.  As of filing, we have not received a response from defense counsel.  Undersigned counsel has spoken to a member of the defendant's family in an attempt to ascertain whether he qualifies for residential treatment through the Veterans' Affairs ("VA") hospital and, if so, what assurances (if any) a VA facility could provide to the government and the Court that it could provide monitoring and/or structure so as to assure the defendant's return to court and/or community.  As of filing, undersigned counsel has not been able to speak with a representative of the VA to determine what, if anything, it can offer the defendant or what assurances it would be able to provide the Court and the government.

## No Condition or Combination of Conditions Will Reasonably Assure the Safety of any other Person and the Community

**1. Nature and Circumstances of the Offense Charged**

The nature and circumstances of the offense charged in this case support detention. The government's evidence shows that the defendant poses a clear risk of flight and risk to the safety of the community. A consideration of the nature and circumstances of the offense also requires the Court to weigh the possible penalty the defendant faces upon conviction. See *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Indeed, the seriousness of the defendant's crime is reflected in the sentence he would face if convicted. The defendant faces five years of imprisonment on the charge of a violation of 18 U.S.C. § 871.

The facts as alleged in the affidavit in support of the complaint and proffered above underscore the risks the defendant presents—both of flight and of danger—if he is released without a robust plan to address his mental health issues.

The facts of the case show clear signs of delusional thinking by the defendant. He could not give consistent answers as to whether he drove to the District of Columbia from Wisconsin or Florida on the day of the incident. He repeated on multiple occasions words to the effect that he was listening to a higher power who spoke to him, or that he took orders from the "Holy Spirit," which only told him to hurt bad people. Although government counsel has not been able to obtain copies of medical records to confirm the diagnosis reported in eCheck, his behavior on the date of the incident is consistent with that diagnosis. He was moreover reported missing, and that missing persons report was active at the time of this incident.

While the defendant was exhibiting this delusional behavior, he was denying that he needed any treatment for it. He moreover refused to tell Pretrial Services where he would live, and he also reported to the Pretrial officer that he had 32 children. Under these circumstances,

5

unless the issues underlying the defendant's delusions are addressed, the Court can have no confidence that he will return for hearings as directed.

### 2. The Weight of Evidence Against the Defendant

The weight of the evidence against the defendant is substantial. He was identified and arrested on scene, which is where he made the threatening statements. The knife was recovered from the defendant's person. He reiterated making the threatening statement in a subsequent interview. The Court found probable cause to believe that the arrest had been committed when it signed the complaint and arrest warrant.

### 3. The History and Characteristics of the Defendant

The defendant's history and characteristics also support pretrial detention. Mr. Hedgpeth committed this offense after having been reported. He had been involuntarily committed to two VA institutions in separate states in the recent past. The defendant has no ties to the District of Columbia and has not proffered any stable housing that would be available to him in any jurisdiction upon his release. The defendant's method of arriving in the District of Columbia—traveling from either Florida or Wisconsin under circumstances that involved a missing-persons report—should not give the Court any assurances that he will follow any conditions of release that this Court sets, including a return date for Court. The defendant's delusional behavior, combined with a demonstrated unwillingness to seek or consent to treatment for the underlying causes, further exacerbate his flight risk.

### 4. The Nature and Seriousness of the Danger to Any Person or the Community

The circumstances of this crime shows that the defendant poses a danger to the community. While armed with a dangerous weapon and while wearing a holster that could

create the appearance of being further armed, the defendant approached a Secret Service checkpoint at the White House in the middle of the day and with numerous people around, and told a Secret Service officer that he was there to kill the Prsident.  In so doing, he created a very real danger.  Thankfully no one was harmed by law enforcement's response to the defendant's actions, but it is not hard to imagine the situation unfolding differently if the Secret Service officer had seen the holster and believed it to contain a gun or if the defendant had made some sort of movement that the officer thought was a threat.  All of the innocent people in the area were potentially at risk if the defendant's interaction with the Secret Service escalated.

Moreover, while the defendant's delusions remain untreated, he remains a danger to the public.  He has stated that he would harm someone if the Holy Spirit told him to.  The defendant's actions on February 8 show that he is willing to carry a dangerous weapon while simultaneously professing a willingness to carry out the voices' instructions.  As long as that remains the case, the defendant remains a serious danger to the community.

## Conclusion

Based on the nature of the charges, the weight of the proffered evidence against the defendant, his risk of flight, his characteristics and history, and the lack of a plan to address the apparent conditions underlying the defendant's expressed delusions, it is evident that at this stage in the proceedings no condition or combination of conditions will reasonably assure the appearance of defendant at later court hearings.

Under the factors set forth in 18 U.S.C. § 3142(g), the government has demonstrated by a preponderance of the evidence that the defendant should be detained as a serious risk of flight. For the foregoing reasons, as well as any that may be adduced at a hearing on this matter, the government requests that the Court order the pre-trial detention of the defendant.

>
> Respectfully submitted,
>
> TIMOTHY J. SHEA
> UNITED STATES ATTORNEY
> D.C. Bar Number 437437
>
>
> By: _/s/ Erik M. Kenerson_____
> ERIK M. KENERSON
> Assistant United States Attorney
> Ohio Bar Number 82960
> United States Attorney's Office
> 555 Fourth Street, N.W.
> Washington, D.C.  20530
> Telephone: 202-252-7201
> Email: Erik.Kenerson@usdoj.gov